**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**BROWNSVILLE DIVISION**

| | | |
|---|---|---|
| **CARDINAL HEALTH 110, LLC**, | ) | CASE NO. 1:25-cv-00191 |
| | ) | |
| *Plaintiff*, | ) | JUDGE FERNANDO RODRIGUEZ, JR. |
| | ) | |
| -vs- | ) | MAGISTRATE IGNACIO TORTEYA, III |
| | ) | |
| **SRINIVASA TALLA**, *et al.*, | ) | **SECOND AMENDED COMPLAINT** |
| | ) | |
| *Defendants*. | ) | **(Jury Demanded)** |

Plaintiff Cardinal Health 110, LLC ("CH 110" or "Plaintiff"), by and through undersigned counsel, for its *Second Amended Complaint* against (i) Srinivasa Talla; (ii) Brownsville Pharmacy #3, LLC d/b/a Autrey Pharmacy 3; (iii) Harlingen Pharmacy, LLC; (iv) Brownsville Pharmacy #4, LLC d/b/a Autrey Pharmacy 4; (v) Brownsville Pharmacy #2, LLC d/b/a Autrey Pharmacy 2; (vi) Srinivas Gadiraju; and (vii) Fry Pharmacy, LLC (collectively, the "Defendants") hereby states and alleges as follows:

## THE PARTIES

1. CH 110 is a limited liability company duly organized in the State of Delaware and authorized to do business in Texas, among other states.

2. CH 110 is a subsidiary of Cardinal Health, Inc.

3. Cardinal Health, Inc. is the sole member of CH 110.

4. Cardinal Health, Inc. is incorporated in Ohio.

5. Cardinal Health, Inc.'s principal place of business is located at 7000 Cardinal Place, Dublin, Ohio 43017.

6. Based on the foregoing, CH 110 is a citizen of Ohio.

7. Defendant Srinivas Talla ("Talla") is an individual of full age and majority who is

1

a citizen of New Jersey and resides at 29 Raspberry Trail, Warren, NJ 07059, based upon information and belief.

8.     Defendant Brownsville Pharmacy #3, LLC d/b/a Autrey Pharmacy 3 ("BP3") is a limited liability company duly organized in the State of Texas whose principal place of business is located at 800 East Alton Gloor Boulevard, Unit B, Brownsville, Texas 78526. Lokeswara R. Kalakoti ("Kalakoti") and Talla are the Managing Members and the Members of BP3, based upon information and belief.  Kalakoti is a citizen of Brownsville, Texas, and Talla is a citizen of New Jersey, based upon information and belief.

9.     Defendant Harlingen Pharmacy, LLC ("HP") is a limited liability company duly organized in the State of Texas whose principal place of business is located at 1616 North Ed Carey Drive, Harlingen, Texas 78550.  Talla and Kalakoti are the Managing Members and the Members of HP, based upon information and belief.

10.    Defendant Brownsville Pharmacy #4, LLC d/b/a Autrey Pharmacy 4 ("BP4") is a limited liability company duly organized in the State of Texas whose principal place of business is located at 3503 Boca Chica Boulevard, Suite 1, Brownsville, Texas 78521. Kalakoti is the Managing Member and the sole Member of BP4, based upon information and belief.

11.    Defendant Brownsville Pharmacy #2, LLC d/b/a Autrey Pharmacy 2 ("BP2") is a limited liability company duly organized in the State of Texas whose principal place of business is located at 1365 East Ruben Torres SR Boulevard, Brownsville, Texas 78521.  Talla and Kalakoti are the Managing Members and the Members of BP2, based upon information and belief.

12.    Defendant Srinivas Gadiraju ("Gadiraju") is an individual of full age and majority and a citizen of New Jersey who resides at 1 Overlook Drive, Riverdale, New Jersey 07457.

13.    Defendant Fry Pharmacy, LLC ("Fry") is a limited liability company duly

organized in the State of Texas whose principal place of business is located at 311 North Sam Houston Boulevard, San Benito, Texas 78586. The members of Fry are Talla and Kalakoti, based upon information and belief.

## JURISDICTION AND VENUE

14.     This Court possesses personal jurisdiction over Defendants BP3, HP, BP4, BP2, and Fry because their principal places of business are located in Texas.

15.     This Court possesses personal jurisdiction over Defendants Talla and Gadiraju pursuant to Section 17.042 of the Texas Civil Practice and Remedies Code. As set forth below, Talla and Gadiraju were personal guarantors for five (5) pharmacies that conducted business in Texas for many years and failed to comply with their payment obligations arising in Texas. Those pharmacies, which were owned and/or managed by Talla and Gadiraju, sold goods to Texas residents.

16.     Defendants received the funds at issue in this lawsuit in Texas.

17.     This Court possesses diversity subject matter jurisdiction pursuant to 28 U.S.C. § 1332.

18.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b).

## FACTUAL BACKGROUND
### The Credit Applications and the Personal Guaranties

16.     This matter relates to a refund program created by CH 110 where participants would return certain pharmaceutical products to CH 110's third party returns processor.

17.     Before participating in this refund program, a participant must have an established line of credit with CH 110 by virtue of a credit application.

18.     BP3, HP, BP4, BP2, and Fry (collectively, the "Entity Defendants") each executed separate credit applications while Talla and Gadiraju (collectively, the "Guarantor Defendants")

3

executed personal guaranties for those credit applications. Specifically:

(a)    Or about March 2, 2015, BP3 executed a final credit application to CH 110 (the "BP3 Credit Application"), and Talla (the "BP3 Guarantor") executed a personal guaranty (the "BP3 Guaranty") as part of the BP3 Credit Application. A true and accurate copy of the BP3 Credit Application, with confidential information redacted, is attached hereto as **Exhibit 1** and incorporated by this reference.

(b)    On or about March 17, 2014, HP executed a final credit application to CH 110 (the "HP Credit Application"), and Talla (the "HP Guarantor") executed a personal guaranty (the "HP Guaranty") as part of the HP Credit Application. A true, accurate, and complete copy of the HP Credit Application containing the HP Guaranty, with confidential information redacted, is attached hereto as **Exhibit 2** and incorporated by this reference.

(c)    On or about July 15, 2017, BP4 executed a final credit application to CH 110 (the "BP4 Credit Application"), and Talla (the "BP4 Guarantor") executed a personal guaranty (the "BP4 Guaranty") as part of the BP4 Credit Application. A true, accurate, and complete copy of the BP4 Credit Application containing the BP4 Guaranty, with confidential information redacted, is attached hereto as **Exhibit 3** and incorporated by this reference.

(d)    On or about December 3, 2012, BP2 executed a final credit application to CH 110 (the "BP2 Credit Application"), and Talla and Gadiraju (the "BP2 Guarantors") executed personal guaranties (the "BP2 Guaranties") as part of the BP2 Credit Application. A true, accurate, and complete copy of the BP2 Credit Application containing the BP2 Guaranties, with confidential information redacted, is attached hereto as **Exhibit 4** and incorporated by this reference.

(e)     On or about October 13, 2015, Fry executed a final credit application to CH 110 (the "Fry Credit Application"), and Talla and Gadiraju (the "Fry Guarantors") executed personal guaranties (the "Fry Guaranties") as part of the Fry Credit Application. A true, accurate, and complete copy of the Fry Credit Application containing the Fry Guaranties, with confidential information redacted, is attached hereto as **Exhibit 5** and incorporated by this reference.

### The Prefund Program

19.     If a participant was already a CH 110 customer and they were otherwise qualified, a participant could then take part in a program designed by CH 110 whereby it could return and deliver certain pharmaceutical products purchased by the participant from CH 110 (the "Returnable Goods").

20.     Participants were required to execute a separate enrollment form with CH 110 to participate in the program.

21.     Participants would return and deliver to CH 110 Returnable Goods, and upon receipt of the Returnable Goods, CH 110 would prefund the return amount to such participants by paying them a percentage of the refund amounts.

22.     CH 110 would thereafter return the Returnable Goods to certain manufacturers to receive funds (the "Prefund Program").

23.     In accordance with the terms of the Prefund Program, participants were required to return only Returnable Goods to CH 110 to be eligible to receive a prefund.

24.     Because the terms of the Prefund Program specify what pharmaceutical products qualify as Returnable Goods, participants were aware of such qualifications when participating in the Prefund Program.

25.　　All Defendants engaged with CH 110 pursuant to, and became participants in, the Prefund Program. Specifically:

(a)　　On or about January 23, 2020, BP3 entered into the Prefund Program. A true, accurate, and complete copy of the BP3 enrollment form, with confidential information redacted, is attached hereto as **Exhibit 6** and incorporated by this reference.

(b)　　On or about January 30, 2020, HP entered into the Prefund Program. A true, accurate, and complete copy of the HP enrollment form, with confidential information redacted, is attached hereto as **Exhibit 7** and incorporated by this reference.

(c)　　On or about January 23, 2020, BP4 entered into the Prefund Program. A true, accurate, and complete copy of the BP4 enrollment form, with confidential information redacted, is attached hereto as **Exhibit 8** and incorporated by this reference.

(d)　　On or about January 24, 2020, BP2 entered into the Prefund Program. A true, accurate, and complete copy of the BP2 enrollment form, with confidential information redacted, is attached hereto as **Exhibit 9** and incorporated by this reference.

(e)　　On or about January 24, 2020, Fry entered into the Prefund Program. A true, accurate, and complete copy of the Fry enrollment form, with confidential information redacted, is attached hereto as **Exhibit 10** and incorporated by this reference.

26.　　Defendant Talla is an owner/member and/or personal guarantor of each Entity Defendant named in this lawsuit and was involved in sending certain goods to CH 110 in anticipation of receiving a refund under the Prefund Program.

### The BP3 Breaches

27.　　Prior to participating in the Prefund Program, CH 110 and BP3 entered into the BP3 Credit Application.

28.     On or about January 23, 2020, BP3 agreed to participate in the Prefund Program as part of its dealings with CH 110. The Prefund Program expanded upon the BP3 Credit Application and became a single contract (the "BP3 Contract").

29.     The BP3 Contract sets forth CH 110's agreement with BP3 to accept orders from BP3 on credit in exchange for BP3's agreement to pay for such orders in accordance with the established payment terms.

30.     Between May 2021 and June 2023, BP3, Talla, and Gadiraju (collectively, the "BP3 Defendants") submitted Returnable Goods to CH 110 pursuant to the Prefund Program (the "Received BP3 Goods").

31.     Thereafter, and upon request by BP3, CH 110 prefunded the sum of $341,829.87 to BP3 pursuant to the BP3 Contract (the "BP3 Funds").

32.     However, after CH 110 returned the BP3 Returned Goods to the manufacturer, the requests for reimbursement were rejected because the BP3 Returned Goods were not Returnable Goods.

33.     The BP3 Defendants submitted the Received BP3 Goods to CH 110 knowing that they did not qualify as Returnable Goods and knowing that they would ultimately be rejected by the manufacturer.

34.     On or about February 8, 2024, after CH 110's rebate requests were denied by the manufacturer, CH 110 contacted the BP3 Defendants to demand the return of the BP3 Funds.

35.     CH 110 presented a formal demand for repayment to BP3 on February 8, 2024. A true and accurate copy of CH 110's demand letter is attached hereto as **Exhibit 11**.

36.     To date, the BP3 Defendants have refused to repay CH 110 the BP3 Funds.

7

**The HP Breaches**

37.     Prior to participating in the Prefund Program, CH 110 and HP entered into the HP Credit Application.

38.     On or about January 30, 2020, HP agreed to participate in the Prefund Program as part of its dealings with CH 110. The Prefund Program expanded upon the HP Credit Application and became a single contract (the "HP Contract").

39.     The HP Contract sets forth CH 110's agreement with HP to accept orders from HP on credit in exchange for HP's agreement to pay for such orders in full accordance with the established payment terms. The HP Contract also gives CH 110 the right to, among other things, recover its attorneys' fees and costs related to collecting any amounts due under the contract. See, Sect. III(4).

40.     Between June 2021 and June 2023, HP and Talla (collectively, the "HP Defendants") submitted Returned Goods to CH 110 pursuant to the Prefund Program (the "Received HP Goods").

41.     Thereafter, and upon request by HP, CH 110 prefunded the sum of $298,338.19 to HP pursuant to the HP Contract (the "HP Funds").

42.     However, after CH 110 returned the Received HP Goods to the manufacturer, the requests for reimbursement were rejected because the Received HP Goods were not Returnable Goods.

43.     The HP Defendants submitted the Received HP Goods to CH 110 knowing that they did not qualify as Returnable Goods and knowing that they would ultimately be rejected by the manufacturer.

44. On or about February 8, 2024, after CH 110's refund requests were denied by the manufacturer, CH 110 contacted the HP Defendants to demand the return of the HP Funds.

45. CH 110 presented a formal demand for repayment to HP on February 8, 2024. A true and accurate copy of CH 110's demand letter is attached hereto as **Exhibit 12**.

46. To date, the HP Defendants have refused to repay CH 110 the HP Funds.

### The BP4 Breaches

47. Prior to participating in the Prefund Program, CH 110 and BP4 entered into the BP4 Credit Application.

48. On or about January 23, 2020, BP4 agreed to participate in the Prefund Program as part of its dealings with CH 110. The Prefund Program expanded upon the BP4 Credit Application and became a single contract (the "BP4 Contract").

49. The BP4 Contract sets forth CH 110's agreement with BP4 to accept orders from BP4 on credit in exchange for BP4's agreement to pay for such orders in full accordance with the established payment terms. The BP4 Contract also gives CH 110 the right to, among other things, recover its attorneys' fees and costs related to collecting any amounts due under the contract. See, Sect. III(4).

50. On or between June 2021 and June 2023, BP4, Talla, and Gadiraju (collectively, the "BP4 Defendants") submitted Returnable Goods to CH 110 pursuant to the Prefund Program (the "Received BP4 Goods").

51. Thereafter, and upon request by BP4, CH 110 prefunded the sum of $295,495.11 to BP4 pursuant to the BP4 Contract (the "BP4 Funds").

52. However, after CH 110 returned the Received BP4 Goods to the manufacturer, the requests for reimbursement were rejected because the Received BP4 Goods were not Returnable

Goods.

53.     The BP4 Defendants submitted the Received BP4 Goods to CH 110 knowing that they did not qualify as Returnable Goods and knowing that they would ultimately be rejected by the manufacturer.

54.     On or about February 8, 2024, after CH 110's refund requests were denied by the manufacturer, CH 110 contacted the BP4 Defendants to demand the return of the BP4 Funds.

55.     CH 110 presented a formal demand for repayment to BP4 on February 8, 2024. A true and accurate copy of CH 110's demand letter is attached hereto as **Exhibit 13**.

56.     To date, the BP4 Defendants have refused to repay CH 110 the BP4 Funds.

### The BP4 Product Purchases

57.     Additionally, BP4 purchased products from CH 110 pursuant to the BP4 Credit Application. See, Ex. 3.

58.     As set forth above, Talla was a personal guarantor in relation to the BP4 Credit Application.

59.     Pursuant to the BP4 Credit Application, CH 110 furnished products to BP4.

60.     Thereafter, BP4 failed to pay CH 110 $16,123.00 in relation to its orders.

61.     To date, neither BP4 nor Talla has paid CH 110 in relation to the outstanding balance due and owing related to products.

### The BP2 Breaches

62.     Prior to participating in the Prefund Program, CH 110 and BP2 entered into the BP2 Credit Application.

63.     On or about January 24, 2020, BP2 agreed to participate in the Prefund Program as part of its dealings with CH 110. The Prefund Program expanded upon the BP2 Credit Application

10

and became a single contract (the "BP2 Contract").

64.     The BP2 Contract sets forth CH 110's agreement with BP2 to accept orders from BP2 on credit in exchange for BP2's agreement to pay for such orders in relation to the specified payment terms. The BP2 Contract also gives CH 110 the right to, among other things, recover its attorneys' fees and costs related to collecting any amounts due under the contract. See, Sect. III(4).

65.     Between May 2021 and June 2023, BP2, Talla, and Gadiraju (the "BP2 Defendants") submitted Returnable Goods to CH 110 pursuant to the Prefund Program (the "Received BP2 Goods").

66.     Thereafter, and upon request by BP2, CH 110 prefunded the sum of $178,137.62 to BP2 pursuant to the BP2 Contract (the "BP2 Funds").

67.     However, after CH 110 returned the Received BP2 Goods to the manufacturer, the requests for reimbursement were rejected because the Received BP2 Goods were not Returnable Goods.

68.     The BP2 Defendants submitted the Received BP2 Goods to CH 110 knowing that they did not qualify as Returnable Goods and knowing that they would ultimately be rejected by the manufacturer.

69.     On or about February 8, 2024, after CH 110's refund requests were denied by the manufacturer, CH 110 contacted the BP2 Defendants to demand the return of the BP2 Funds.

70.     CH 110 presented a formal demand for repayment to BP3 on February 8, 2024. A true and accurate copy of CH 110's demand letter is attached hereto as **Exhibit 14**.

71.     To date, the BP2 Defendants have refused to repay CH 110 the BP2 Funds.

### The Fry Breaches

72.     Prior to participating in the Prefund Program, CH 110 and Fry entered into the Fry

11

Credit Application.

73.    On or about January 24, 2020, Fry agreed to participate in the Prefund Program as part of its dealings with CH 110. The Prefund Program expanded upon the Fry Credit Application and became a single contract (the "Fry Contract").

74.    The Fry Contract sets forth CH 110's agreement with Fry to accept orders from Fry on credit in exchange for Fry's agreement to pay for such orders in full accordance with the established payment terms. The Fry Contract also gives CH 110 the right to, among other things, recover its attorneys' fees and costs related to collecting any amounts due under the contract. See, Sect. III(4).

75.    Between June 2021 and June 2023, Fry, Talla, and Gadiraju (collectively the "Fry Defendants") submitted Returned Goods to CH 110 pursuant to the Prefund Program (the "Received Fry Goods").

76.    Thereafter, and upon request by Fry, CH 110 prefunded the sum of $128,329.31 to Fry pursuant to the Fry Contract (the "Fry Funds").

77.    However, after CH 110 returned the Received Fry Goods to the manufacturer, the requests for reimbursement were rejected because the Received Fry Goods were not Returnable Goods.

78.    The Fry Defendants submitted the Received Fry Goods to CH 110 knowing that they did not qualify as Returnable Goods and knowing that they would ultimately be rejected by the manufacturer.

79.    On or about February 8, 2024, after CH 110's refund requests were denied by the manufacturer, CH 110 contacted the Fry Defendants to demand the return of the Fry Funds.

80.    To date, the Fry Defendants have refused to repay CH 110 the Fry Funds.

## COUNT ONE
### Breach of Contract – BP3

81.    CH 110 hereby restates each and every allegation set forth above as if fully restated herein.

82.    The BP3 Contract constitutes a valid and enforceable agreement between CH 110 and BP3.

83.    CH 110 fulfilled its obligations pursuant to the BP3 Contract.

84.    BP3 has breached the BP3 Contract by, among other ways, delivering pharmaceutical products that do not qualify as Returnable Goods to CH 110, falsely representing that such products are Returnable Goods that are eligible for the Prefund Program, requesting and receiving the BP3 Refund Funds even though BP3 knew the products would be rejected by the manufacturer, and refusing to repay the BP3 Refund Funds to CH 110 despite knowing they are not entitled to them under the terms of the BP3 Contract.

85.    As a direct and proximate cause of BP3's breaches of contract, CH 110 has suffered damages in excess of $341,829.87, with a final amount to be determined at trial.

## COUNT TWO
### Breach of Contract – BP3 Guaranty

86.    CH 110 hereby restates each and every allegation set forth above as if fully restated herein.

87.    In relation to the BP3 Contract between CH 110 and BP3, the BP3 Guarantor executed the BP3 Guaranty wherein the BP3 Guarantor agreed to, among other things, be responsible for any and all monies BP3 owed CH 110 in the event of a default or breach.

88.    The BP3 Guaranty constitutes a valid and enforceable contract.

89.    CH 110 fulfilled its obligations pursuant to the BP3 Guaranty.

90.    The BP3 Guarantor has breached his BP3 Guaranty by, among other things, failing

to repay monies BP3 owes CH 110 related to the BP3 Refund Funds.

91.     As a direct and proximate cause of the BP3 Guarantor's breach of contract, CH 110 has suffered damages in excess of $341,829.87, with a final amount to be determined at trial.

**COUNT THREE**
**Breach of Contract - HP**

92.     CH 110 hereby restates each and every allegation set forth above as if fully restated herein.

93.     The HP Contract constitutes a valid and enforceable agreement between CH 110 and HP.

94.     CH 110 fulfilled its obligations pursuant to the HP Contract.

95.     HP has breached the HP Contract by, among other ways, delivering pharmaceutical products that do not qualify as Returnable Goods to CH 110, falsely representing that such products are Returnable Goods that are eligible for the Prefund Program, requesting and receiving the HP Refund Funds even though HP knew the products would be rejected by the manufacturer(s), and refusing to repay the HP Refund Funds to CH 110 despite knowing they are not entitled to them under the terms of the HP Contract.

96.     As a direct and proximate cause of HP's breach of contract, CH 110 has suffered damages in excess of $298,338.19, with a final amount to be determined at trial.

**COUNT FOUR**
**Breach of Contract – HP Guaranty**

97.     CH 110 hereby restates each and every allegation set forth above as if fully restated herein.

98.     In relation to the HP Contract between CH 110 and HP, the HP Guarantor executed the HP Guaranty wherein the HP Guarantor agreed to, among other things, be responsible for any and all monies HP owed CH 110 in the event of a default or breach.

14

99.    The HP Guaranty constitutes a valid and enforceable contract.

100.    CH 110 fulfilled each and every one of its obligations pursuant to the HP Guaranty.

101.    The HP Guarantor has breached his HP Guaranty by, among other things, failing to repay monies HP owes CH 110 related to the HP Refund Funds.

102.    As a direct and proximate cause of the HP Guarantor's breach of contract, CH 110 has suffered damages in excess of $298,338.19, with a final amount to be determined at trial.

## COUNT FIVE
### Breach of Contract – BP4

103.    CH 110 hereby restates each and every allegation set forth above as if fully restated herein.

104.    The BP4 Contract constitutes a valid and enforceable agreement between CH 110 and BP4.

105.    CH 110 fulfilled its obligations pursuant to the BP4 Contract.

106.    BP4 has breached the BP4 Contract by, among other ways, delivering pharmaceutical products that do not qualify as Returnable Goods to CH 110, falsely representing that such products are Returnable Goods that are eligible for the Prefund Program, requesting and receiving the BP4 Refund Funds even though BP4 knew the products would be rejected by the manufacturer(s), and refusing to repay the BP4 Refund Funds to CH 110 despite knowing they are not entitled to them under the terms of the BP4 Contract.

107.    As a direct and proximate cause of BP4's breaches of contract, CH 110 has suffered damages in excess of $295,495.11, with a final amount to be determined at trial.

## COUNT SIX
### Breach of Contract – BP4 Guaranty

108.    CH 110 hereby restates each and every allegation set forth above as if fully restated

15

herein.

109.    In relation to the BP4 Contract between CH 110 and BP4, the BP4 Guarantor executed the BP4 Guaranty wherein the BP4 Guarantor agreed to, among other things, be responsible for any and all monies BP4 owed CH 110 in the event of a default or breach.

110.    The BP4 Guaranty constitutes a valid and enforceable contract.

111.    CH 110 fulfilled each and every one of its obligations pursuant to the BP4 Guaranty.

112.    The BP4 Guarantor has breached his BP4 Guaranty by, among other things, failing to repay monies BP4 owes CH 110 related to the BP4 Refund Funds.

113.    As a direct and proximate cause of the BP4 Guarantor's breach of contract, CH 110 has suffered damages in excess of $295,495.11, with a final amount to be determined at trial.

## COUNT SEVEN
### Breach of Contract – BP4 – Products

114.    CH 110 hereby restates each and every allegation, whether set forth above or below, as if fully restated herein.

115.    CH 110 and BP4 entered into the valid and enforceable BP4 Goods Contract.

116.    CH 110 fulfilled each and every one of its obligations pursuant to the BP4 Goods Contract.

117.    BP4 has breached the BP4 Goods Contract by, among other things, failing to pay CH 110 in full for the goods it ordered and received from CH 110.

118.    As a direct and proximate result of BP4's breaches CH 110 has suffered damages exceeding $16,123.00, with a final amount to be determined at trial.

## COUNT EIGHT
### Breach of Guaranty – BP4 Products

119.    CH 110 hereby restates each and every allegation, whether set forth above or below,

16

as if fully restated herein.

120.     In relation to the BP4 Goods Contract between CH 110 and BP4, Talla executed a BP4 Goods Contract Guaranty wherein he agreed to, among other things, be responsible for any and all monies BP4 owed CH 110 in the event of a default/breach.

121.     The BP4 Goods Contract Guaranty is a valid and enforceable contract.

122.     CH 110 fulfilled each and every one of its obligations pursuant to the BP4 Goods Contract Guaranty.

123.     Talla has breached the BP4 Goods Contract Guaranty by, among other things, failing to repay monies BP4 owes CH 110 related to goods BP4 received.

124.     As a direct and proximate result of Talla's breaches CH 110 has suffered damages exceeding $16,123.00, with a final amount to be determined at trial.

## COUNT NINE
### Breach of Contract – BP2

125.     CH 110 hereby restates each and every allegation, whether set forth above or below, as if fully restated herein.

126.     The BP2 Contract constitutes a valid and enforceable agreement between CH 110 and BP2.

127.     CH 110 fulfilled its obligations pursuant to the BP2 Contract.

128.     BP2 has breached the BP2 Contract by, among other ways, delivering pharmaceutical products that do not qualify as Returnable Goods to CH 110, falsely representing that such products are Returnable Goods that are eligible for the Prefund Program, requesting and receiving the BP2 Refund Funds even though BP2 knew the products would be rejected by the manufacturer(s), and refusing to repay the BP2 Refund Funds to CH 110 despite knowing they are not entitled to them under the terms of the BP2 Contract.

129. As a direct and proximate result of BP2's breaches CH 110 has suffered damages exceeding $178,137.62, with a final amount to be determined at trial.

## COUNT TEN
### Breach of Contract – BP2 Guaranties

130. CH 110 hereby restates each and every allegation, whether set forth above or below, as if fully restated herein.

131. In relation to the BP2 Contract between CH 110 and BP2, the BP2 Guarantors each executed the BP2 Guaranties wherein each BP2 Guarantor agreed to, among other things, be responsible for any and all monies BP2 owed CH 110 in the event of a default or breach.

132. The BP2 Guaranties constitute valid and enforceable contracts.

133. CH 110 fulfilled each and every one of its obligations pursuant to the BP2 Guaranties.

134. Each BP2 Guarantor has breached their respective BP2 Guaranty by, among other things, failing to repay monies BP2 owes CH 110 related to the BP2 Refund Funds.

135. As a direct and proximate result of BP2 Guarantor's breaches CH 110 has suffered damages exceeding $178,137.62, with a final amount to be determined at trial.

## COUNT ELEVEN
### Breach of Contract – Fry

136. CH 110 hereby restates each and every allegation, whether set forth above or below, as if fully restated herein.

137. The Fry Contract constitutes a valid and enforceable agreement between CH 110 and the Fry Defendants.

138. CH 110 fulfilled its obligations pursuant to the Fry Contract.

139. Fry has breached the Fry Contract by, among other ways, delivering pharmaceutical products that do not qualify as Returnable Goods to CH 110, falsely representing that such products

are Returnable Goods that are eligible for the Prefund Program, requesting and receiving the Fry Refund Funds even though Fry knew the products would be rejected by the manufacturer, and refusing to repay the Fry Refund Funds to CH 110 despite knowing they are not entitled to them under the terms of the Fry Contract.

140. As a direct and proximate cause of Fry's breaches of contract, CH 110 has suffered damages in excess of $128,329.31, with a final amount to be determined at trial.

## COUNT TWELVE
**Breach of Contract – Fry Guaranties**

141. CH 110 hereby restates each and every allegation, whether set forth above or below, as if fully restated herein.

142. In relation to the Fry Contract between CH 110 and Fry, the Fry Guarantors each executed the Fry Guaranties wherein each Fry Guarantor agreed to, among other things, be responsible for any and all monies Fry owed CH 110 in the event of a default or breach.

143. The Fry Guaranties constitute valid and enforceable contracts.

144. CH 110 fulfilled each and every one of its obligations pursuant to the Fry Guaranties.

145. Each Fry Guarantor has breached their respective Fry Guaranty by, among other things, failing to repay monies Fry owes CH 110 related to the Fry Refund Funds.

146. As a direct and proximate cause of the Fry Guarantor's breaches of contract, CH 110 has suffered damages in excess of $128,329.31, with a final amount to be determined at trial.

## COUNT THIRTEEN
(Money Had and Received)

147. Guarantors and Entity Defendants possess money that in equity in good conscience belongs to CH 110.

## CONDITIONS PRECEDENT

148.    All conditions precedent to recovery have occurred or been performed.

## **PRAYER**

**WHEREFORE**, Plaintiff Cardinal Health 110, LLC hereby requests that defendants be summoned to appear and answer and for entry of judgement awarding the following relief:

(i)     On Count One, judgment in CH 110's favor and against Defendant Brownsville Pharmacy #3, LLC and damages of at least $341,829.87, the exact amount of said damages to be determined at trial;

(ii)    On Count Two, judgment in CH 110's favor and against Defendant Srinivasa Talla and damages of at least $341,829.87, the exact amount of said damages to be determined at trial;

(iii)   On Count Three, judgment in CH 110's favor and against Defendant Harlingen Pharmacy, LLC and damages of at least $298,338.19, the exact amount of said damages to be determined at trial;

(iv)    On Count Four, judgment in CH 110's favor and against Defendant Srinivasa Talla and damages of at least $298,338.19, the exact amount of said damages to be determined at trial;

(v)     On Count Five, judgment in CH 110's favor and against Defendant Brownsville Pharmacy #4, LLC and damages of at least $295,495.11, the exact amount of said damages to be determined at trial;

(vi)    On Count Six, judgment in CH 110's favor and against Defendant Srinivasa Talla and damages of at least $295,495.11, the exact amount of said damages to be determined at trial;

(vii)   On Count Seven, judgment in CH 110's favor and against Defendant Brownsville Pharmacy # 4, LLC and damages of at least $16,123.00, the exact amount of said damages to be determined at trial;

(viii)  On Count Eight, judgment in CH 110's favor and against Defendant Srinivasa Talla and damages of at least $16,123.00, the exact amount of said damages to be determined at trial;

(ix)    On Count Nine, judgment in CH 110's favor and against Defendant Brownsville Pharmacy #2, LLC and damages of at least $178,137.62, the exact amount of said damages to be determined at trial;

(x)    On <u>Count Ten</u>, judgment in CH 110's favor and against Defendants Srinivasa Talla and Srinivas Gadiraju, jointly and severally, and damages of at least <u>$178,137.62</u>, the exact amount of said damages to be determined at trial;

(xi)    On <u>Count Eleven</u>, judgment in CH 110's favor and against Defendant Fry Pharmacy, LLC and damages of at least <u>$128,329.31</u>, the exact amount of said damages to be determined at trial;

(xii)    On <u>Count Twelve</u>, judgment in CH 110's favor and against Defendants Srinivasa Talla and Srinivas Gadiraju, jointly and severally, and damages of at least <u>$128,329.31</u>, the exact amount of said damages to be determined at trial;

(xiii)    Attorney's fees and costs pursuant to the contracts and guaranties noted herein and pursuant to Chapter 38 of the Texas Civil Practice and Remedies Code;

(xiv)    Pre- and post-judgment interest at the highest rates allowed;

(xv)    Taxable costs; and

(xvi)    Any additional relief the Court deems just and equitable.

Respectfully submitted,

_/s/ Kevin Pennell_
Kevin Pennell (TBN 24046607)
Fed ID No 583414
Pennell Law Firm PLLC
19 Briar Hollow Ln ste 110
Houston TX 77027
713-965-7568
713-583-9455 (fax)
kevin@pennellfirm.com
**ATTORNEY FOR PLAINTIFF**

R. Scott Heasley (OH #0087235)
Hilary F. DeSaussure (OH #0098989)
BRENNAN, MANNA & DIAMOND, LLC
75 E. Market Street
Akron, Ohio 44308
Phone / Fax : (216) 428-4718
Email: rsheasley@bmdllc.com
        hfdesaussure@bmdllc.com

**ATTORNEY FOR PLAINTIFFS**
*(Pro Hac Vice Forthcoming)*

21

## DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. Rule 38(b), Plaintiff Cardinal Health 110, LLC hereby demands a trial by jury for any and all issues triable of right by a jury.

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing instrument was served upon all counsel of record on this 6th day of May 2026, by CM/ECF.

*/s/ Kevin Pennell*